# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

—————————————————————————
)
)
**EPIPHANY LAZARUS KING LAZARRE,**                )
)
**Plaintiff,**                                                      )
)
**v.**                                                              )
)     **Case No. 18-cv-12260-DJC**
)
**THOMAS A. TURCO, III, et al.,**                )
)
**Defendants.**                                               )
)
)
—————————————————————————)


## MEMORANDUM AND ORDER

**CASPER, J.**                                                          **December 17, 2020**

## I.    Introduction

Plaintiff Epiphany Lazarus King Lazarre ("Lazarre") brings this suit against the Massachusetts Department of Corrections ("DOC"), the Commissioner of the DOC, Carol A. Mici ("Mici") in her official capacity, the Superintendent of Old Colony Correctional Center ("OCCC") Stephen Kennedy in his official capacity, former Superintendent Suzanne Thibault ("Thibault"), correctional officer Aaron Beausoleil ("Beausoleil"), Sergeant Michael Amaral ("Amaral"), correctional officer Michael Carton ("Carton"),[1] correctional officer Michael Cunha ("Cunha"), Captain Peter L. Pascucci ("Pascucci") (collectively, the "DOC Defendants"), medical director Emily Holmes ("Holmes"), Dr. Susan Milliken ("Dr. Milliken"),[2] Dr. John Straus ("Dr. Straus")

---

[1] The DOC Defendants have filed a notice of suggestion of death pursuant to Fed. R. Civ. P. 25(a)(1) that Carton died on January 9, 2020.  D. 73.

[2] Lazarre voluntarily dismissed his claim against Dr. Milliken.  D. 77.

and Dr. Adriana Carrillo ("Dr. Carrillo") alleging discrimination, intimidation and retaliation claims in violation of the Americans with Disabilities Act ("ADA") and deliberate indifference to his serious medical needs and safety in violation of the Eighth Amendment.  D. 67.  The DOC Defendants move to dismiss the counts against them under Fed. R. Civ. P. 12(b)(6).  D. 71.  Dr. Carrillo separately moves to dismiss the claims against her.  D. 78.  For the reasons stated below, the Court ALLOWS in part and DENIES in part the DOC Defendants' motion to dismiss and DENIES Dr. Carrillo's motion to dismiss.

## II.    Standard of Review

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id.  The Court must accept the factual allegations as true and may disregard conclusory legal assertions. Id. (citing Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (internal citation omitted).

## III.    Procedural History

Lazarre filed his initial *pro se* complaint on October 25, 2018 and later amended his complaint on April 26, 2019.  D. 1; D. 14.  On May 14, 2019, this Court dismissed forty-seven of the defendants, including defendant Pascucci for failure to state a claim on which relief can be

granted pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(b).  D. 15.  Some of the remaining defendants filed various motions to dismiss the *pro se* first amended complaint.  D. 31; D. 41; D. 52.  On July 11, 2019, Lazarre filed a motion to appoint counsel, D. 37, which this Court granted.  D. 46.  On March 13, 2020, this Court dismissed the pending motions to dismiss without prejudice to renew once it appointed counsel to Lazarre.  D. 57.

On March 27, 2020, the Court appointed Lazarre *pro bono* counsel for the limited purpose of filing an opposition to the pending motions to dismiss and/or filing an amended complaint. D. 61.  On June 15, 2020, Lazarre's counsel filed the second amended complaint, dropping several defendants, adding new defendants, including former defendant Pascucci and bringing forth new claims for relief.  D. 67.  The DOC Defendants and Dr. Carrillo have now moved to dismiss the second amended complaint for failure to state a claim.  D. 71; D. 78.  On October 15, 2020, the Court heard the parties on the pending motions to dismiss and took the matters under advisement. D. 88.

## IV.     Factual Background

The Court accepts the following non-conclusory factual allegations drawn from Lazarre's second amended complaint, D. 67, as true for the purposes of resolving the pending motions to dismiss.  Lazarre is currently an inmate at OCCC in Bridgewater, Massachusetts, where he has been held since 2014.  D. 67 ¶ 1.

### A.      Lazarre's Medical Problems

Prior to his incarceration, Lazarre suffered spinal injuries in an automobile accident, causing long-term, debilitating back pain and mobility impairments.  Id. ¶ 19.  Lazarre's condition has worsened substantially during his incarceration.  Id. ¶ 20.

While previously detained at Nashua Street Jail in 2014, Lazarre received a series of three lumbar epidural steroid injections in his back at Boston Medical Center and staff prescribed him Vicodin.  Id. ¶ 34.  When Lazarre arrived at OCCC later in 2014, the staff replaced his pain medication with Motrin and Tylenol.  Id. ¶ 35.  Around September 2017, Dr. Milliken, an OCCC medical doctor examined Lazarre after he made a sick call about his back pain.  Id.  ¶ 37.  Dr. Milliken and Emily Holmes, OCCC's medical director, made an appointment for Lazarre to receive steroid injections at Lemuel Shattuck Hospital ("Lemuel Shattuck") and Dr. Milliken prescribed prednisone.  Id.  Lazarre protested going to Lemuel Shattuck because "he had heard about other inmates receiving poor treatment" there.  Id.

Lazarre met with defendant Dr. Carrillo at Lemuel Shattuck on September 21, 2017.  Id. ¶ 38.  She administered two injections into his lower back.  Id.  "Immediately after receiving the injections," Lazarre's body went numb, he was unable to walk and he returned to OCCC in a wheelchair.  Id. ¶ 39.  Lazarre additionally experienced swelling, burning and cramps.  Id. ¶ 40. Lazarre experienced constant pain that was more severe than what he experienced prior to getting the injections, he lost his ability to use the toilet and control bowel movements, and was unable to walk long distances to participate in English classes, mental health group meetings or any other of his usual activities.  Id.  Lazarre also experienced loss of his eyesight.  Id. ¶ 43.

Lemuel Shattuck had instructed the OCCC staff to contact the hospital if Lazarre experienced new symptoms but the OCCC staff did not do so, nor did they return him for additional examination.  Id. ¶ 47.  Dr. Milliken and Holmes also did not send Lazarre back to Lemuel Shattuck for a planned third injection after observing the effects of the first two injections.  Id.  ¶ 46.  Dr. Carrillo did not conduct a follow-up examination of Lazarre and never explained why the

injections she administered severely impaired his mobility and worsened his pain.  Id.  ¶ 47.  One week after the injections, Lazarre was given a walker to assist him.  Id.  ¶ 42.

A month later, in October 2017, OCCC medical staff sent Lazarre to Souza-Baranowski Correctional Center ("SBCC") for physical therapy for one month.  Id.  ¶ 44.  Lazarre returned to OCCC in November 2017 in a wheelchair.   Id.  When he arrived back at OCCC, his body was numb, and he was kept in OCCC's medical ward.  Id. ¶ 45.  As alleged, the medical staff refused to treat Lazarre for his pain, took away his wheelchair and issued him a walker.  Id.  Lazarre alleges that the use of the walker has caused him additional pain in his shoulders, arms and hands, chronic pain and buckling of his legs, numbness, dizziness, and shortness of breath.  Id. ¶ 83.

On several occasions, Lazarre requested accommodations for his medical needs but to no avail.  Id. ¶ 23.  Lazarre filed several grievances at OCCC and made requests related to his mobility impairments but OCCC medical staff refused to address his needs and downplayed his impairments and pain.  Id. ¶ 50.  Dr. Straus and Holmes insisted that Lazarre could engage in activities without the accommodations he requested.  Id.  In January 2018, Lazarre filed a grievance requesting an early pass for movement and a handicapped cell but OCCC staff denied these requests.  Id. ¶ 51.  In February 2018, Lazarre made a sick call request regarding the adverse effects from his injections and OCCC medical staff referred him to an in-house physician.  Id. ¶ 52.  Lazarre alleges that this physician could not address the effects of the injections.  Id.  Lazarre acknowledged that prior to the September 2017 injections, Holmes was receptive to his concerns but that after September 2017, he alleges that she told him she could not assist him because the injections did not help.  Id. ¶ 53.

In May 2018, Lazarre met with then-Superintendent Thibault and Holmes to discuss his medical treatment and his requests for a wheelchair and handicap shower chair.  Id. ¶ 55.  As

Lazarre alleges, Holmes spat in Lazarre's face and told him that he filed too many grievances and that "for as long as she worked at OCCC, he would not receive a wheelchair" because there was a possibility that Lazarre would sue OCCC and the staff regarding his injections.  Id.  Lazarre alleges that Holmes and Thibault threatened him with "adverse consequences."  Id. ¶ 99.

In August 2018, Dr. Straus examined Lazarre and ordered a wheelchair based on his observations that Lazarre struggled with his walker, experienced shortness of breath, chest pain and pain in his lower back and legs.  Id. ¶ 57.  Dr. Straus, however, subsequently cancelled the wheelchair because, as Lazarre alleges, Beausoleil, Amaral, Carton, Pascucci and Holmes pressured him to do so and claimed that they had seen Lazarre walking unassisted.  Id. ¶ 58.

Lazarre, however, filed a grievance against Dr. Straus for refusing to provide him treatment and he requested to see a different doctor.  Id. ¶ 59.  Holmes denied these requests.  Id.  Lazarre alleges that Dr. Straus and Holmes have continued to obstruct his efforts to receive a wheelchair and medical treatment for his chronic pain and impaired mobility.  Id ¶¶ 59-63.

In addition to back pain, Lazarre alleges that he cannot perform basic daily tasks such as walking, lifting objects, showering, or using the toilet without severe pain and risk of injuring himself.  Id. ¶ 21.  Lazarre also has been diagnosed with a degenerative narrowing "of the c2 and c3 vertebrae and schizophrenia spectrum disorder" and "suffers from undiagnosed symptoms of vision loss, loss of his ability to speak, and chronic headaches."  Id. ¶ 22.

### B.      Alleged Abuse by OCCC Correctional Staff

According to Lazarre, OCCC correctional staff reacted poorly to Lazarre's grievances related to his medical condition.  On several occasions in 2017 and 2018, Cunha, Carton and Amaral harassed, assaulted, and called him derogatory and racist names.  Id. ¶¶ 66-68.  In May 2018 and on other occasions, Beausoleil came to Lazarre's cell, destroyed his possessions, verbally

abused him, beat, and kicked him inside his cell and threatened to kill him if he reported the abuse. Id. ¶ 70.  On May 25, 2018, Carton interviewed Lazarre regarding his interactions with Amaral and Beausoleil.  Id. ¶ 71.  Carton tried to force Lazarre to sign a waiver to protect Amaral and Beausoleil.  Id.  When Lazarre refused to sign the waiver, Carton threatened to place Lazarre in solitary confinement, handcuffed Lazarre, placed him on the floor and beat him with his boot.  Id. Lazarre complained to Thibault about the abuse he suffered but Thibault dismissed his complaints and called Lazarre derogatory names.  Id. ¶ 72.

While at OCCC, Lazarre alleges that Amaral, Beausoleil and Carton told him that they would pay other inmates to beat him up.  Id.  In December 2017, "Inmate A" at OCCC physically assaulted Lazarre and as a result Lazarre suffered a concussion and was sent to OCCC's medical ward.  Id ¶¶ 76-77.  In October 2018, "Inmate B" sexually assaulted Lazarre.  Id. ¶¶ 78-79.  Lastly, in December 2018, "Inmate C," who was Lazarre's helper, assaulted Lazarre with a walker.  Id. ¶¶ 80-81.  Lazarre suffered another concussion and his walker broke from the assault.  Id. ¶ 80. Lazarre alleges that the correctional officers encouraged all three inmates to assault him and chose not to intervene to defend him.  Id.  ¶¶ 77, 79, 81.

## V.     DOC Defendants' Motion to Dismiss

### A.     Lazarre's Claims Are Properly Joined

DOC Defendants assert that this Court should dismiss Lazarre's second amended complaint based on improper joinder of claims.  D. 72 at 5.  There are two requirements under the Federal Rules of Civil Procedure 20 for permissive joinder.  First, the right to relief asserted against the defendants must arise out of the same transaction, occurrence, or series of transactions or occurrences.  Fed. R. Civ. P. 20(a)(2).  Second, there must be questions of law or fact common to the defendants.  Id.  The present case meets both requirements.

As to the first requirement, Lazarre has alleged that all Defendants took actions that displayed a deliberate indifference to his medical needs and that Defendants did not accommodate same. Specifically, Lazarre has brought claims against DOC, Commissioner Mici and Superintendent Kennedy in their official capacities for violations of the ADA and the Eighth Amendment arising out of OCCC's refusal to provide reasonable accommodation for his mobility impairments. D. 67 (Count I and Count IV). Lazarre also asserts that Holmes, Thibault, Dr. Straus, and officers Beusoleil, Amaral, Carton, Cunha and Pasucci retaliated against him and intimidated him in violation of the ADA and the Eighth Amendment because he requested accommodations. Id. (Count II, Count III, Count V and Count VI). Lazarre's allegations against Dr. Milliken, Dr. Carrillo, and Dr. Straus, similarly allege that they were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Id. (Count VII). These allegations, which assert that Defendants' actions caused Lazarre's medical condition to worsen, are sufficient to satisfy the "same transaction or occurrence" requirement of permissive joinder. See Eastern Fireproofing Co. v. United States Gypsum Co., 160 F. Supp. 580, 581 (D. Mass. 1958) (holding that joinder is permissive where defendants engaged in conduct that had a singular "ultimate impact" on plaintiff).

As to the second requirement, common questions of law exist against the Defendants. Here, Lazarre has brought allegations that all defendants violated the Eighth Amendment by showing a deliberate indifference to his serious medical needs. As to the DOC Defendants moreover, Lazarre has alleged that they all violated the ADA by failing to provide him with medical accommodations. See Liberty Media Holdings, LLC v. Swarm Sharing Hash File, 821 F. Supp. 2d 444, 451-52 (D. Mass. 2011) (holding that there are common questions of law where plaintiff brings identical claims against several defendants).

8

Given that Lazarre satisfies both requirements, the Court concludes that Lazarre's claims are properly joined.

### B.    Lazarre Satisfies the Pleading Requirements of Fed. R. Civ. P. 8(A)(2)

DOC Defendants argue that Lazarre's second amended complaint is vague, ambiguous and fails to give them adequate notice.  D. 72 at 7.  The Federal Rules of Civil Procedure require that the complaint contain "a short and plain statement of the grounds for the court's jurisdiction . . .  a short and plain statement of the claim showing that the pleader is entitled to relief; and ... a demand for the relief sought."  Fed. R. Civ. P. 8(a)(1)-(3).  This statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  It must afford the defendants a "'meaningful opportunity to mount a defense.'" Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)).

Lazarre's claims meet the "minimal pleading requirements of Rule 8."  Silva v. E.U.A. Nova, No. C.A. 97-117ML, 1998 WL 226292, at *1 (D. R.I. Apr. 1, 1998).  Lazarre's second amended complaint brings claims against the DOC as an entity, Mici and Kennedy in their official capacity and Thibault and the correctional officers as individual employees at OCCC.  The second amended complaint alleges that DOC Defendants failed to accommodate Lazarre's alleged mobility impairments and were deliberately indifferent to his medical condition and safety.  D. 67 at 17-24. Lazarre's claims are thus more than adequate to meet the pleading requirements because the complaint makes the DOC Defendants aware of the claims they must defend against (specifically violations of the ADA and the Eighth Amendment arising from their denial of his

wheelchair request and other accommodations and the actions they took in retaliation for his requests of same).[3]

DOC Defendants next argue that Lazarre's complaint must be dismissed because "for several of Plaintiff's claims, no specific date is provided of when the alleged incidents occurred, instead only stating a month and year, only a year, or in one case writing 'on this and other occasions' which were not even identified by a year." D. 72 at 7. DOC Defendants have not cited to any legal authority for the proposition that a complaint must include a specific date to state a claim. Here, Lazarre has provided a timeframe—whether by noting a specific month and year or just a year for his claims. See e.g., D. 67 ¶¶ 37, 43, 54. Even on the two occasions where Lazarre alleges that an event occurred "on this and other occasions," he gives a timeframe for when the event first occurred. For example, in or around August 2018, and "on this and other occasions," Defendant Straus ridiculed and dismissed Lazarre in response to his request for accommodations, Id. ¶ 101, and on or around May 25, 2018 . . . "on this and other occasions" Officer Beausoleil verbally abused him, called him derogatory names, beat and kicked him inside his cell and threatened to kill him. Id. ¶ 70. Thus, even when Lazarre does not provide a specific date for every occurrence of an action taken by the DOC Defendants, he alleges sufficient facts about the events that occurred to give the DOC Defendants fair notice of the claims against them. Accordingly, the Court will not dismiss Lazarre's claims for failing to provide a more specific date. See Casanova v. Ulibarri, 595 F.3d 1120, 1125 (10th Cir. 2010) (holding that inclusion "of

---

[3]While Lazarre's complaint does include superfluous allegations, namely his medical treatment and alleged assault at Nashua Street Jail, D. 67 ¶¶ 23-25, 28-33 & 66, these alleged facts "do not predominate over the facts that are relevant and properly pled." Marrero-Rolón v. Autoridad de Energía Eléctrica de P.R., No. 15-1167-JAG/SCC, 2015 WL 5719801, at *4 (D. P.R. Sept. 29, 2015).

a specific date may not be necessary to state a claim if the complaint alleges sufficient detail about an event to identify it").

Lastly, as to DOC Defendants assertion that Lazarre's allegations are insufficient because some of his allegations are made "upon information and belief," D. 72 at 8, the Federal Rules "permit pleading on this basis" at least for Rule 8 purposes.  Counter v. Healy, No. 09-12144-RGS, 2010 WL 2802179, at *6 n. 5 (D. Mass Jun. 28, 2010) (citation omitted).  Accordingly, the Court finds that Lazarre satisfies the Rule 8 requirements.

### C.   Eighth Amendment Violations

#### 1.   Lazarre's Eighth Amendment Claim Against Mici and Kennedy for Monetary Damages Is Dismissed (Count IV)

Lazarre brings forth a claim against Mici and Kennedy in their official capacities for violations of the Eighth Amendment pursuant to Section 1983.  D. 67 at 20 (Count IV).  Lazarre alleges that he made several grievances and in person requests for medical assistance and other relief in relation to his mobility impairment to Kennedy and Thibault.  D. 67 ¶ 112.  Despite these complaints, Thibault and other OCCC staff failed to meet his serious medical needs and denied him relief.  Id. ¶¶ 113-114.  Lazarre alleges that "DOC and OCCC, through Commissioner Mici, Superintendent Kennedy, and OCCC personnel have shown deliberate indifference to [his] serious medical needs, resulting in injury to [him.]"  Id. ¶ 115.

The Eleventh Amendment of the United States Constitution, however, generally bars suits in federal courts against a State, and its agents and officials for monetary damages, unless the State has consented to suit, or Congress has provided for an abrogation of the State's immunity.  Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997); Shocrylas v. Worcester State Coll., No. 06-40278-FDS, 2007 WL 3332818, at *2 (D. Mass. Oct. 29, 2007).  The DOC is an agency of the

Commonwealth, and thus it and its agents are shielded from suits under the Eleventh Amendment. Sepulveda v. UMass Correctional Health Care, 160 F. Supp. 3d 371, 396 (D. Mass. 2016).

The Eleventh Amendment does not, however, prevent Lazarre from pursuing equitable damages under Section 1983. See Stone v. Caswell, 963 F. Supp. 2d 32, 37 (D. Mass. 2013) (citing Missouri v. Jenkins by Agyei, 491 U.S. 274, 284 (1989)); Seaver v. Manduco, 178 F. Supp. 2d 30, 36 (D. Mass. 2002) (citing Hawkins v. Rhode Island Lottery Commission, 238 F.3d 112, 116 (1st Cir. 2001)). Lazarre's complaint seeks both monetary damages and equitable relief. D. 67 at 26-27. Thus, to the extent Lazarre seeks equitable relief against Mici and Kennedy in their official capacities, he may maintain his claims. Therefore, the Court DISMISSES Lazarre's Eighth Amendment claim (Count IV) against Mici and Kennedy in their official capacities, insofar as he seeks monetary damages.

### 2. *Lazarre Has Alleged Sufficient Facts to Support His Eighth Amendment Claims Against the DOC Defendants*

The Eighth Amendment prohibition against cruel and unusual punishment prevents prisoners from medical mistreatment or neglect that is "so inadequate as to shock the conscience." Perry v. Roy, 782 F.3d 73, 78 (1st Cir. 2015) (quoting Torraco v. Maloney, 923 F.2d 231, 235 (1st Cir. 1991)) (internal quotation marks omitted); see Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 161 (1st Cir. 2006). "The failure of correctional officers to provide inmates with adequate medical care may offend the Eighth Amendment if their 'acts or omissions are sufficiently harmful to evidence deliberate indifference to serious medical needs.'" Leavitt v. Correctional Medical Services, 645 F.3d 484, 497 (1st Cir. 2011) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). A claim of deliberate indifference based on inadequate or delayed medical care requires a plaintiff to satisfy both an objective and subjective inquiry. See e.g., Perry, 782 F.3d at 78; Leavitt, 645 F.3d at 497.

To fulfill the objective test, a plaintiff must establish that his medical need was "sufficiently serious." Burrell v. Hampshire Cty., 307 F.3d 1, 8 (1st Cir. 2002).  DOC Defendants argue that Lazarre has not alleged a sufficiently serious medical need.  The DOC Defendants contend that Lazarre's "undated diagnosis" and personal opinions that he is essentially paralyzed do not meet the pleading requirements.  D. 72 at 12.  They also contend that while Lazarre alleges he is blind; he wrote multiple *pro se* complaints and motions by hand.  Id.  A "serious medical need" is "one that has been diagnosed by a physician mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014) (citing Estelle, 429 U.S. at 106).  As alleged, Lazarre has been diagnosed with degenerative narrowing of his vertebrae, and thus has a serious medical need.  D. 67 ¶ 22.  He also alleges that he suffers from mobility impairments and debilitating pain due to a spinal injury, he cannot walk, lift objects, or use the toilet without severe pain or risk of injury, he has suffered loss of his eyesight, and these conditions have worsened while at OCCC.  Id. ¶¶ 21-22.  These allegations, which must be taken as true for the purpose of a motion to dismiss, are sufficiently "obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Kosilek, 774 F. 3d at 82; see Abernathy v. Dewey, 277 F. Supp. 3d 129, 140 (D. Mass. 2017) (finding that plaintiff's allegations that he suffered from visible cuts, bleeding, bruising and swelling were sufficient to meet the serious medical need standard despite lack of medical diagnosis).

To satisfy the subjective showing, a plaintiff must show they acted with intent or wanton disregard when providing inadequate care.  See Perry, 782 F.3d at 79.  To satisfy this, Lazarre must show that the DOC Defendants knew of a substantial risk of serious harm and disregarded that risk.  Ruiz–Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007) (quoting Farmer v. Brennan,

511 U.S. 825, 837 (1994)).  The subjective prong of the Eighth Amendment inquiry is often a question "better resolved on a motion for summary judgment or at trial, once the relevant facts have been discovered."  Sepulveda, 160 F. Supp. 3d at 386; see Torraco, 923 F.2d at 234 (explaining that a "state-of-mind issue such as the existence of deliberate indifference usually presents a jury question").

"The Courts have consistently refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment."  Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993).  "[W]here a prisoner, [moreover], has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  Bradshaw v. Correctional Medical Services, Inc., 6 F. App'x 45, 46 (1st Cir. 2001) (citation omitted).  Lazarre, however, "alleges more than a mere disagreement over the proper course of treatment."  Sepulveda, 160 F. Supp. 3d at 385.  Instead, Lazarre alleges that "OCCC management and medical staff rebuked [him] for making a large number of requests and threatened adverse actions related to his treatment and accommodations based on those requests."  D. 67 ¶ 54.  Prison officials and doctors may exhibit deliberate indifference if they deny medical treatment to punish an inmate.  Watson, 984 F.2d at 540.  Here, Lazarre has alleged that during a meeting with Thibault and Holmes, Holmes informed him that they would not provide him with a wheelchair because there was a possibility that he would sue OCCC staff.  D. 67 ¶ 55.  Assuming this is true, as the Court must at this point, the DOC's continuing denial of Lazarre's request for a wheelchair did not stem from a mere disagreement regarding his need for the wheelchair, but instead was a form of punishment.

DOC Defendants further contend that Lazarre has not sufficiently pled that they were deliberately indifferent to his medical needs because as non-medical officials they were entitled to defer to the medical staff.  D. 72 at 10-11.  Lazarre alleges, however, that by May 2018, OCCC staff began denying his request for medical accommodations because they were frustrated with the number of grievances that he filed.  See D. 67 ¶ 55.  In August 2018, moreover, after an examination, Dr. Straus determined that Lazarre needed a wheelchair.  Id. ¶ 57.  It was, according to Lazarre, Defendants Beausoleil, Amaral, Carton, Pascucci,[4] and Holmes that "pressured Dr. Straus to cancel the wheelchair because they claimed to have seen [him] walking without assistance."  Id. ¶ 58.  Reading Lazarre's complaint in the light most favorably to him, he has sufficiently alleged that it was the non-medical staff at OCCC, not the medical professional, that made the determination that he would not receive a wheelchair.  This determination was made, not because they disagreed with his assessment of his mobility issues but instead, as punishment for filing several grievances.

Assuming these facts are true, as the Court must on a motion to dismiss, the Court must determine whether denying accommodation requests because a prisoner files several grievances constitutes deliberate indifference.  At this juncture, the Court finds that such a determination is

---

[4] DOC Defendants also move to dismiss claims against Pascucci based on the Court's earlier dismissal of claims against him.  D. 72 at 3 n. 3.  This Court dismissed the claims against Pascucci and forty-six other defendants in Lazarre's pro se amended complaint pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(b) for failing to state a claim on which relief may be granted where the amended complaint did not make any factual allegations as to Pascucci.  D. 15.  This Court's prior order did not indicate whether dismissal of claims against Pascucci was with or without prejudice.  Generally, in the absence of any notation to the contrary, dismissal is presumed to be with prejudice.  Segelman v. City of Springfield, 561 F. Supp. 2d 123, 125 (D. Mass. 2008).  Here, however, given that the earlier dismissal of Pascucci was based upon review of Lazarre's pro se complaint in which contained no allegations against him, D. 14, the Court appointed counsel after this dismissal, permitted Lazarre to file a second amended complaint and this operative pleading now includes factual allegations specific to Pascucci, see e.g., D. 67 ¶58,  the Court will allow Lazarre's claims against Pascucci to proceed.

"better resolved on a motion for summary judgment or at trial, once the relevant facts have been discovered." Sepulveda, 160 F. Supp. 3d at 386.  Thus, at this juncture, the Court finds that Lazarre has stated sufficient facts for his Eighth Amendment claim to survive.  Id.[5]

    **D.**    **ADA Claims**

        *1.*    *Lazarre's Claims for Monetary Damages Are Dismissed (Counts I – III)*

First, "[i]ndividuals can recover money damages under the ADA only if they prove intentional discrimination by the defendant." LeClair v. MBTA, 300 F. Supp. 3d 318, 325 (D. Mass. 2018) (citation omitted); see Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 126 (1st Cir. 2003) (holding that "private individuals may recover compensatory damages under . . . Title II only for intentional discrimination").  "Many circuit courts have held that the applicable standard for proving intentional discrimination is one of deliberate indifference." Cox v. Massachusetts Department of Correction, No. 13-cv-10379-FDS, 2018 WL 1586019, at *7 (D. Mass. 2018) and LeClair, 300 F. Supp. 3d at 325 (citations and internal quotation marks omitted).  "However, the First Circuit appears to have adopted the more stringent standard of 'discriminatory animus.'" Id. (citing Nieves-Marquez, 353 F.3d at 126-27 and Carmon-Rivera v. Puerto Rico, 464 F.3d 14, 17-18 (1st Cir. 2006)).

Deliberate indifference requires Lazarre to show (1) "knowledge that a harm to a federally protected right is substantially likely," and (2) "a failure to act upon that . . . likelihood." Barber v. Colorado Dept. of Revenue, 562 F.3d 1222, 1229 (10th Cir. 2009) (citing Duvall v. County of

---

[5] The DOC Defendants also argue that Lazarre's claim fails to state a failure to protect claim against the correctional officers based upon allegations that they encouraged several inmates to abuse him physically and sexually.  D. 72 at 14-16.  They also argue that Lazarre cannot sufficiently plead a violation of the Eighth Amendment based on allegations that the correctional officers harassed and threatened him and used racial epithets. Id. at 17.  Since Lazarre has clarified that he is not asserting a failure to protect claim or a claim based on their threats, harassment, or discrimination, D. 84 at 8, these arguments are moot and the Court need not reach them.

Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2009)).  Here, Lazarre has alleged that all the DOC Defendants had knowledge that he requested medical accommodations.  See e.g. D. 67 ¶¶ 55 & 105-106.  Lazarre moreover has alleged that DOC Defendants rejected his requests for accommodations. D. 67 ¶¶ 101 & 105.  This is sufficient under the deliberate indifference test for his claims to survive.  See Cox, 2018 WL 1586019, at *8 (ruling that deliberate indifference standard was met where plaintiff established that defendants knew about his need for assistance and refused to provide same).

Lazarre's allegations, however, do not satisfy discriminatory animus test, i.e., that Lazarre plead facts from which the Court can infer that the DOC Defendants held any discriminatory animus towards him because of his disabilities. To show discriminatory animus, Lazarre must allege that "defendant intended to discriminate against plaintiff based on his disability." LeClair, 300 F. Supp. 3d at 326.  Although Lazarre plausibly alleges, as discussed below, that the DOC Defendants retaliated against him because of his grievances, it is not plausibly alleged that they took actions against him because of his disability.  Lazarre does not offer much on this point, suggesting that it is premature for the Court to dismiss his claim on this ground because whether he will be able to show intentional discrimination is a factual question that cannot be decided on a motion to dismiss. D. 84 at 11 n. 6.  Since the Court does not conclude that this predicate for ADA claim for damages is plausibly stated, the Court ALLOWS the motion to dismiss to this portion of the ADA claim.  Although monetary damages for his ADA claim are not available, "injunctive relief would be," Carmona-Rivera, 464 F3d at 18, and the Court proceeds to address whether that portion of his ADA discrimination claim otherwise survives.

2.       *ADA Discrimination Claim Against DOC, Mici and Kennedy (Count I)*

The DOC Defendants argue, and Lazarre does not appear to dispute, D. 84 at 10 n. 4, that Lazarre has not alleged specific facts as to Mici and Kennedy that they failed to grant him reasonable accommodations.  D. 72 at 20.  Lazarre argues that he does not need to allege specific facts against Mici and Kennedy because the suit is brought against them in their official capacities. D. 84 at 10 n. 4.  "[W]here a suit is brought against individual public officials in their official capacities, such a suit is effectively to be considered a suit against the officials' offices."  Navedo v. Maloney, 172 F. Supp. 2d 276, 289 (D. Mass. 2001) (citing Will v. Michigan Dep't of State Police, 491 US 58, 71 (1989) and Wang v. New Hampshire Bd, of Registration in Med., 55 F.3d 698 (1st Cir. 1995)).  An official capacity claim against Mici as the Commissioner of the DOC and Kennedy as the Superintendent of the OCCC, however, is redundant because Lazarre has already named the DOC as a defendant.  See Martini v. City of Pittsfield, No. 14-30152-MGM, 2015 WL 1476768, at * 7 n. 5 (D. Mass. Mar. 31, 2015) (finding that official capacity claim against defendant would be redundant because plaintiff filed a claim against the office as well) (citing Decotiis v. Whittemore, 635 F.3d 22, 38 n. 19 (1st Cir. 2011)).  Accordingly, the Court ALLOWS DOC Defendants' motion to dismiss Lazarre's discrimination claim against Mici and Kennedy in their official capacity.

As to the DOC, DOC Defendants argue that the discrimination claim must be dismissed because DOC is entitled to rely on the professional opinions of medical providers in the ADA context.  See D. 72 at 18.  As discussed above, however, reading Lazarre's complaint in the light most favorable to him, he has sufficiently alleged that starting in May 2018, DOC Defendants did not rely upon medical opinions when they made their determinations that a wheelchair was not medically necessary.  Instead, staff made these decisions as punishment because he filed several grievances.  Thus, the DOC Defendants contention that they deferred to the medical staff and "had

no role in deciding what level of medical care [Lazarre] would receive" is in dispute and "must be decided based on an evidentiary record at summary judgment or trial." Messere v. Clark, No. C.A. No. 11-cv-12166-MLW, 2015 WL 5609959, at * 13 (D. Mass. Sept. 22, 2015). Accordingly, the portion of Lazarre's ADA discrimination claim for equitable relief survives.

### 3. ADA Retaliation Claims Against Thibault and Correctional Officers (Count II and Count III)

To state a claim for retaliation, Lazarre must show that: (1) he engaged in protected conduct; (2) he was subject to an adverse action by the DOC Defendants; and (3) there was a causal connection between his protected conduct and the adverse action. Smith v. The Pub. Sch. of Northborough–Southborough Massachusetts, 133 F. Supp. 3d 289, 294 (D. Mass. 2015) (citing D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 40–41 (1st Cir. 2012)). Lazarre has alleged that he filed grievances requesting accommodations for his disabilities. Lazarre alleges that because of these grievances Thibault ridiculed him and threatened him with adverse consequences. D. 67 ¶ 99   DOC Defendants argue that the Court should not accept this factual assertion because "in his first iteration of this factual allegation, Defendant Holmes was the only one to threaten and ridicule him, yet Plaintiff brings this claim against Defendant Thibault." D. 72 at 21. In evaluating a motion to dismiss, however, the Court must assume the veracity of well-pleaded factual allegations. Assuming Lazarre's allegations are true, i.e., that Thibault threatened and ridiculed him for filing grievances related to accommodations, he has properly pled a claim for retaliation under the ADA.

As to officers Beausoleil, Amaral, Carton, Cunha and Pascucci, Lazarre alleges that they "ridiculed, harassed, abused, and threatened" him in response to his requests for "a wheelchair, a shower chair and other assistance related to his mobility impairments." Id. ¶ 106. DOC Defendants argue that Lazarre has "failed to allege a casual connection between any of the alleged,

and improbable, conduct of these Defendants and his request for reasonable accommodations other that his oft repeated sweeping conclusions stating such." D. 72 at 22. Lazarre's claims that the correctional officers ridiculed, harassed, abused, and threatened him because he made requests for a wheelchair are not legal conclusions but factual assertions that must be taking as true at this juncture. As such, these claims are sufficient to maintain a claim for retaliation.

DOC Defendants also argue that Lazarre's complaint states that Holmes and Dr. Straus indicated that a wheelchair was not medically necessary and thus there was a legitimate permissible reason for the removal of the wheelchair order. D. 72 at 22. First, as the Court has already discussed, Lazarre's complaint alleges that starting in May 2018, OCCC staff began denying his requests because he filed too many grievances. D. 67 ¶ 55. Even assuming there was a permissible reason to deny Lazarre an accommodation, moreover this does not defeat Lazarre's retaliation claims against DOC Defendants. See Valle-Arce v. Puerto Rico Ports Authority, 651 F.3d 190, 198 (1st Cir. 2011) (ruling that "plaintiff's retaliation claim may succeed even where disability claim fails"). Accordingly, Lazarre has sufficient pled a claim of retaliation for equitable relief under the ADA to survive a motion to dismiss.

### E.   DOC Defendants Are Not Entitled to Qualified Immunity

DOC Defendants contend that they are entitled to qualified immunity. D. 72 at 4. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court adopted a two-step sequence for resolving whether a government official was entitled to qualified immunity. First, a court must decide whether the facts that a

plaintiff has alleged or shown make out a violation of a constitutional right.  Saucier, 533 U.S. at 201.  Second, if the first step has been met, the court must decide whether that right was "clearly established" at the time of the defendant's alleged misconduct.  Id.

To determine whether the DOC Defendants are entitled to qualified immunity, the Court must decide whether their conduct violated a "clearly established constitutional right."  Pearson, 555 U.S. at 232.  "Clearly established" for purposes of qualified immunity means that the contours of the right are "sufficiently clear" that "every 'reasonable official would have understood that what he is doing violates that right.'"  Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).   For a right to be clearly established, there does not need to be a "case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate."  Id.  "The court must examine whether there are 'cases of controlling authority . . . at the time of the incident . . . [or] a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'"  Barton v. Clancy, 632 F.3d 9, 22 (1st Cir. 2011) (alterations and omissions in original) (quoting Bergeron v. Cabral, 560 F.3d 1, 11 (1st Cir. 2009)) (internal quotation marks omitted).

As to Lazarre's Eighth Amendment claims, "[i]t has long been established that 'deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eight[h] Amendment.'"  Dantone v. Bhaddi, 570 F. Supp. 2d 167, 173 (D. Mass. 2008) (citing Estelle, 429 U.S. at 105).   Thus, the DOC Defendants would have been on notice that their deliberate indifference to Lazarre's serious medical needs constituted a violation of his constitutional rights.

As to the ADA claims, "[i]t is well established that requesting an accommodation" is behavior protected from retaliation under the ADA.  Carreras v. Sajo Garcia & Partners, 596 F.3d

25, 35 (1st Cir. 2010).  Additionally, in the First Amendment context, it is "well-established that retaliating against an inmate for filing grievances violates the inmate's First Amendment rights." Mattel v. Dunbar, 217 F. Supp. 3d 367, 379 (D. Mass. 2016) (citing Mack v. Warden Loretto, FCI, 839 F. 3d 286, 300 (3d Cir. 2016)).  Thus, the correctional officers and Thibault would have had notice that retaliating against Lazarre for protected behavior was unlawful.  Accordingly, assuming Lazarre's allegations to be true as the Court must at this point, the DOC Defendants are not entitled to qualified immunity.

## VI.  Dr. Carrillo's Motion to Dismiss Claims

Lazarre alleges that Dr. Carrillo violated his Eighth Amendment rights because she was deliberately indifferent to his serious medical needs when she conducted a medical procedure "that left [Lazarre] in far worse pain and with far less mobility than he experienced prior to the procedure."  D. 67 ¶ 146.  Dr. Carrillo argues that Lazarre has not sufficiently alleged that she acted with deliberate indifference to his serious medical need.  As discussed above, a claim of deliberate indifference based on inadequate medical care requires a plaintiff to establish that his medical need is or was "sufficiently serious," Burrell, 307 F.3d at 8, and that defendant acted with intent or wanton disregard when providing inadequate care.  See Perry, 782 F.3d at 79.

Dr. Carrillo does not contest that Lazarre has alleged sufficient facts to show a serious medical need.  D. 79 at 5.  Instead, Dr. Carrillo asserts that Lazarre has not alleged facts to show deliberate indifference.  Id. at 6.  Lazarre's allegation that Dr. Carrillo performed a medical procedure that harmed him are not necessarily sufficient to show deliberate indifference. See Nolet v. Armstrong, 197 F. Supp. 3d 298, 307 (holding that botched surgery leading to sepsis did not violate Eighth Amendment).  Lazarre counters however that his allegations go beyond an accusation of a botched injection.  Instead, Lazarre argues that that Dr. Carrillo was deliberately

indifferent to his medical needs when she refused to provide further examination or treatment.  D. 85 at 4.  Although Lazarre's complaint does not allege that Dr. Carrillo refused to provide any requested treatment, there is at least an allegation that the physician failed to follow-up with Lazarre after her injections caused him mobility issues.  Although the claim may not survive on a developed record, see Leavitt v. Correctional Medical Services, Inc., 645 F.3d 484, 498 (1st Cr. 2011), at this stage, Lazarre has plausibly alleged that Dr. Carrillo was deliberately indifferent when she failed to follow-up with Lazarre after her injections worsened Lazarre's medical condition.   See Sepulveda, 160 F. Supp. 3d at 386 (holding that deliberate indifference determination are "better resolved on a motion for summary judgment or at trial, once the relevant facts have been discovered").  Accordingly, the Court DENIES Dr. Carrillo's motion to dismiss.

## VII.   Conclusion

The Court ALLOWS in part and DENIES in part DOC Defendants' motion to dismiss. Specifically, the Court ALLOWS it as to Lazarre's Eighth Amendment claim against Mici and Kennedy in so far as Lazarre seeks monetary damages (Count IV); ALLOWS it as to Lazarre's ADA claims in their entirety against Mici and Kennedy in their official capacity (Count I); and ALLOWS it as to the ADA discrimination claims against the remaining DOC Defendants only to the extent that Lazarre seeks monetary damages (damages claims in Count II and Count III), D. 71. The Court DENIES the DOC Defendants' motion as to the remaining claims.  The Court also DENIES Dr. Carrillo's motion to dismiss, D. 78.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge